Decided 17 December, 1900.

## WADHAMS v. INMAN.

[63 Pac. 11.]

EQUITABLE ASSIGNMENT OF DEBT NOT DUE.

1. A logging company contracted to sell 500,000 feet of logs to defendant, who agreed to pay the market price therefor, and to make advances amounting to $700. Shortly after making the contract, the company notified defendant that it intended to draw orders on defendant in favor of certain creditors, to which defendant assented. The company then drew an order in favor of plaintiff for $420. When the order was given no logs had been delivered, and defendant had advanced $150 on the contract. Subsequently the logs were delivered, the market value thereof being $2,000. *Held,* sufficient to sustain a finding that at the time the order was given there was a debt to become due *in futuro,* on which it would operate as an equitable assignment.

ENTIRE INSTRUCTION MUST BE CONSIDERED.

2. In determining whether an objection to an instruction is well taken, the substance and effect of the instruction must be considered, and

not merely detached portions thereof: *Wellman* v. *Or. Short Line Ry. Co.*, 21 Or. 530, applied.

EQUITABLE ASSIGNMENT — PAYMENTS BY ACCEPTOR.

3. That advances were made by a vendee to his vendor after the vendee's acceptance of an order drawn by the vendor in favor of a third person is no defense to an action on the order, unless such advances were made in pursuance of the contract of sale, before such acceptance, or unless the payee knew of such advances, and assented thereto.

From Multnomah: ALFRED F. SEARS, JR., Judge.

This action is brought by the corporation Wadhams & Company against Inman, Poulsen & Company, also a corporation, on the following order, given by the Washougal Land & Logging Company, for a valuable consideration, to the plaintiff:

"Order No. 2.  September 12, 1894.

"Messrs. Inman, Poulsen & Co.:

"Please pay to Wadhams & Co. the sum of $420 out of the proceeds of logs, when the same is due the Washougal Land & Logging Company.

"J. A. BUCKLEY,
"President."

Immediately upon the delivery of this order to the plaintiff, it was presented for acceptance, and the defendant thereupon promised to pay it if the logs contracted for should be delivered by the drawer, and made a record thereof in its books. The complaint, in addition to alleging the making and delivery of the order and its subsequent presentment to, and acceptance by, the defendant, avers that, prior to its date, the Washougal Land & Logging Company agreed to sell and deliver, and the defendant to purchase, the logs then in the boom in the Washougal River, in the State of Washington, sufficient for the manufacture of about 500,000 feet of lumber, and all other logs that might be put into such river by the logging company during the season of 1894-95; that the logging company should give

orders for money on the defendant, to be numbered consecutively, and to be paid by such defendant, as numbered, out of the proceeds of the logs, and deducted from the purchase price thereof; that, in compliance with its agreement, the logging company did deliver to the defendant, and the defendant received, logs available for the manufacture of about 550,000 feet of lumber, of the market value of about $2,000; that the only order drawn by the logging company on the defendant in pursuance of the contract prior in date to the one in favor of the plaintiff was for $140, in favor of the Columbia River Lumber & Fuel Company; that, after the logs had been delivered to and received by the defendant, the plaintiff demanded payment of the order held by it, but defendant has not paid the same or any part thereof. The answer denies the contract between defendant and the logging company, as set out in the complaint, and alleges that defendant purchased of such company 469,000 feet of logs, which were delivered in the spring of 1895, but that they were not purchased in accordance with such contract, or any other contract, and were fully paid for by the defendant in advances made from time to time to the logging company. Upon the issues thus presented, the cause was tried before a jury, resulting in a verdict in favor of the plaintiff for the face of the order, with interest from the eighteenth day of May, 1896, and from the judgment thereon the defendant appeals.            AFFIRMED.

For appellant there was an oral argument by *Mr. Harry M. Cake,* with a brief over the name of *Cake & Cake.*

For a general discussion of the statute of frauds, as applicable to the facts in this case, the following are submitted : *Weyler* v. *Beach,* 14 Hun, 231, 238; *Miller* v. *Lynch,* 17 Or. 61 (19 Pac. 845) ; *White* v. *Rintoul,* 108 N. Y. 223; *Belknap* v. *Bender,* 75 N. Y. 446 (31 Am. Rep. 476) ; *Ackley* v. *Par-*

*menter,* 98 N. Y. 425 (50 Am. Rep. 693) ; *Dilts* v. *Parke,* 4 N. J. Law, 254; *McKenzie* v. *National Bank,* 9 Wash. 443 (43 Am. St. Rep. 844) ; *Bixby* v. *Church,* 28 Or. 242 (42 Pac. 613) ; *Davis* v. *Patrick,* 141 U. S. 479.

The facts in *Bacharach* v. *McCurrach,* 43 Ill. App. 584, are similar to the present case in regard to the right of defendant to offset his own claims.

For respondent there was an oral argument by *Mr. Joseph N. Teal,* with a brief over the name of *Cotton, Teal & Minor.*

The delivery of the order to the payee operates as an assignment *pro tanto* of the fund. The drawer is bound, after notice thereof, to apply the fund as it accrues to the payment of the order: *Ruple* v. *Bindley,* 91 Pa. St. 296; *McLennan* v. *Walker,* 26 Me. 114; *Brill* v. *Tuttle,* 81 N. Y. 454 (37 Am. Rep. 515) ; *Lowery* v. *Steward,* 25 N. Y. 239 (82 Am. Dec. 346) ; *Morton* v. *Naylor,* 1 Hill, 583 ; *McDaniel* v. *Maxwell,* 21 Or. 202 (28 Am. St. Rep. 740, 27 Pac. 952) ; *Ehrichs* v. *De Mill,* 75 N. Y. 370.

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. The brief of the defendant is directed principally to a discussion of the question as to whether its alleged promise to pay the order given by the logging company to the plaintiff is within the statute of frauds, and therefore void. But upon the argument here it was substantially conceded that the order and promise by defendant to pay it if the logs should be delivered are sufficient to operate as an equitable assignment, if at the time of its presentation and such promise there was a debt actually existing, or to become so *in futuro,* upon which it could operate. This position presents simply a question of fact. The only evidence in the transcript bearing upon the question is the testimony of Mr. Buckley, the president of the logging company, which is to

the effect that on or about the nineteenth of July, 1894, as
the president and manager of the logging company, he en-
tered into a contract on behalf of his principal with the de-
fendant to sell and deliver to it about 500,000 feet of logs
belonging to the company, and then in the boom, and also
such logs as the company might thereafter get out during
the year 1894; that under such contract defendant was to
pay the market price for the logs, and to furnish and advance
supplies to the logging company, amounting in the aggre-
gate to about $700, but there was no contract or agreement
that it should advance or furnish supplies sufficient to enable
the company to conduct its business during the entire sea-
son; that shortly after making the contract some of the cred-
itors of the logging company were urging payment of their
claims, and he told them as soon as there was any money
due on the contract with the defendant he would pay their
accounts; that he informed Mr. Poulsen, of the defendant
company, that he intended to draw orders upon him in favor
of such creditors, and that Mr. Poulsen replied, "Fix them
up so we will know which comes first"; that, in accordance
with this arrangement, he gave an order on the defendant
in favor of Kelly, Dunn & Company, No. 1, for $150, and
one in favor of the plaintiff, No. 2, for $420, and that he
had also given an order in favor of the Columbia River
Lumber & Fuel Company for $140, which was prior in time
to either of the two orders referred to; that at the time these
orders were given no logs had been delivered, and the de-
fendant had advanced only about $150 to the logging com-
pany; that, in pursuance of this contract, 469,000 feet of logs
were delivered to the defendant, and the market value thereof
was $2,030.39. It thus appears that there was evidence from
which the jury could properly find that at the time of the
presentation of the order to the defendant there was a debt
to become due in the future, upon which it could operate as
an assignment.

It is next insisted that the court erred in permitting the witness Fried, the representative of the plaintiff, to answer the question, "When Mr. Poulsen told you, Mr. Fried, that he would pay that out of the proceeds of the logs, if they were delivered, did you rely upon that promise of Inman, Poulsen & Company?" The objection made to this question is that it is an attempt to prove by parol a consideration for the defendant's promise to pay the order, and is void under the statute of frauds. In support of this contention, *Gump* v. *Halberstadt,* 15 Or. 356 (15 Pac. 467), is cited. But, as we have already said, the question of the statute of frauds was abandoned at the hearing, and so this objection falls to the ground. Besides, it is not apparent how the answer to the question could in any way prejudice or affect the defendant's case.

2.   It is also contended that the court erred in giving the following instruction: "There are various aspects in which this matter can be presented. The defendant, among other things, claims that a bill of sale was made of these logs for a certain sum of money, and that advances were made which left not only no indebtedness from the defendant to the Washougal Land & Logging Company, but that the indebtedness was upon the other side. In that case, of course, plaintiff could not recover, unless, after the time when this agreement was made, these advances were made, and were not made in pursuance of a binding agreement entered into between the parties before that; that is, if the defendant agreed to pay this account, and there was sufficient money to meet the account, then it would not be any answer to proceed and make advances which would not only wipe out the indebtedness, but leave a balance on the other side, unless it was in pursuance of a contract which had previously been entered into between the parties, and as to which plaintiff had knowledge." The objection to this instruction is particularly directed to the latter clause, and it is argued that by it

the court charged the jury that advances made by the defendant, in pursuance of a valid contract entered into between it and the logging company previous to the presentation of the order in favor of the plaintiff, would be no defense unless the plaintiff had knowledge of such contract. In determining whether the objection is well taken, the substance and effect of the instructions taken as a whole must be considered, and not merely some detached portion thereof *(Wellmann* v. *Oregon Short Line Ry. Co.,* 21 Or. 530, 28 Pac. 625); and, when so considered and construed, we think it quite clear that the court did not instruct, or intend to instruct, the jury as contended by the defendant. In the instruction complained of it is said that the defendant, among other things, claims that advances were made to the logging company which left no indebtedness from the defendant to it, and in that case plaintiff could not recover unless such advances were made after the acceptance of the order, and not in pursuance of a binding agreement entered into between the parties prior thereto. Immediately following such instruction the court said: "The defendant could not enter into an agreement to pay this sum of money, then proceed and make advances not foreseen at the time, not contemplated, not within the view of the parties, and say that they should be considered as offsetting the claim of the plaintiff, unless the plaintiff had knowledge and assented to such a proposition."

3.    The effect of the instructions, when taken as a whole, is that advances by defendant after the presentation and acceptance of the order would be no defense, unless made (1) in pursuance of an agreement entered into between the original parties before the acceptance of the order, or (2) unless plaintiff knew of such advances and assented thereto. No objection can be made to the law as thus announced. It follows that the judgment of the court below must be affirmed, and it is so ordered.    AFFIRMED.