Argued 17 March; decided 7 April, 1902; rehearing denied.

## LADD *v.* HAWKES.

[68 Pac. 422.]

ACTION FOR RENT—EVIDENCE.

1. Defendant, in an action for rent of a wharf, having alleged he agreed to pay for it only so long as he occupied it, may give evidence not only that he was not in the occupancy of it, but that another was, through agreement with plaintiff.

EFFECT OF ADMISSIONS.

2. A statement of defendant, who alleged he was to pay rent for a wharf only so long as he occupied and used it, that the lease was for an indefinite time, and that he did not surrender possession, is not an admission that he was to pay rent, without regard to use and occupancy.

SELF-SERVING DECLARATIONS.

3. A statement by defendant to plaintiff that he had quit business, and did not want the wharf any longer, is not a self-serving declaration; he alleging that, by the terms of the letting, he was to pay rent only so long as he occupied and used the wharf.

RENT—MEASURE OF VALUE OF REPAIRS.

4. The value of repairs in lease of a wharf, providing the lessor shall pay the lessee the value of repairs if he is not allowed to remove them, is their value as contained in the wharf, and not what the material, if taken out, would sell for.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Action by William M. Ladd against John F. Hawkes. Judgment for defendant. Plaintiff appeals.                AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Francis D. Chamberlain.*

For respondent there was a brief and oral argument by *Mr. John Ditchburn.*

MR. JUSTICE WOLVERTON delivered the opinion.

The plaintiff, as trustee of A. H. and Cordelia Johnson, brought this action to recover rents under an alleged lease. The complaint avers that in May, 1898, the plaintiff let to the defendant a wharf on blocks 1 and 2 in East Portland, at a monthly rental of $20; that defendant entered into possession thereof, and has since continued to occupy it as tenant; that

the rent has been paid to May 31, 1900, only,—and prays judgment for seven months' rental, from June 1 to December 31, 1900, amounting to $140. The defendant denies the leasing and occupancy, except as stated in his answer. For a separate defense, and by way of counterclaim, he alleges that during the year 1894 he entered into an agreement with Cordelia Johnson whereby it was understood and agreed that he should pay her $10 per month as long as he occupied and used the wharf situated on block 2 in East Portland, but that he should not be required to pay anything for or during the time that he did not occupy or use the same; that thereafter, in the year 1898, he and one Swan, who was the agent for the property, entered into an agreement whereby he was to take charge of and occupy the wharf on block 1, and pay $10 per month while in the occupancy and use thereof; that he was to repair and improve said wharf so that he could utilize the same, and that when he should cease to occupy or use it he should have the privilege of removing said "repairs and fixtures," or the owner should pay him the value thereof; that he has not occupied or used said wharves, or either of them, since the 11th day of June, 1900; that he used lumber of the value of $75, expended for labor $50, and for nails $15, aggregating $141, in making such repairs and improvements, for which sum he prays judgment against plaintiff. The reply simply denies the allegations of the answer. A trial was had before a jury, and defendant having obtained a verdict and judgment for $1, plaintiff appeals.

At the trial defendant was permitted to testify, over objections, that he told Elliott, plaintiff's agent, that he desired a settlement with him; that he had quit the business, and wanted to sell to him, or to the man who had rented the wharf, what lumber he had; that he notified Elliott he did not want the wharf any more, and wanted pay for his plank, or to take them away; that at another time he went with a man by the name of Smith to Elliott to rent the wharf, and was told that the box factory had it; and that he went with Smith to the box factory. Charles C. Woodcock, manager of the Standard·

Box Factory, also testified that he spoke to plaintiff's agent about renting the wharf; that the agent told him that he could have it if Hawkes gave it up; that he went to see Hawkes, who said he was going to give it up; that he (witness) told another man, who wanted to put in a wood yard, that he could have it; and he told Elliott that he would take the wharf, but did not take possession of or occupy it. This, with other evidence, was offered, as stated by the defendant's counsel, to show that plaintiff, through Elliott, rented the wharf to the box factory along in July,—about the time it is alleged by the answer that defendant ceased to occupy or to use the same. The plaintiff assigns error on account of the admission of this testimony, on two grounds: (1) Because the defendant has not pleaded a termination of the lease; and (2) that the testimony consists in part of self-serving acts and declarations on the part of the defendant. It should be noted in this connection that defendant offered, and there were received in evidence, certain receipts given by plaintiff to defendant during the year 1898, subsequent to May 1st, acknowledging payments of rentals on account of the wharf at $10 per month; also that, when opening the case to the jury, counsel for defendant was interrogated by one of the jurors as follows: "Q. Mr. Ditchburn, was the lease with the plaintiff for an indefinite time? A. Yes. Q. Did you ever surrender the possession of the premises to the plaintiff? A. No." In this connection the counsel further stated to the jury that he contended there was no other agreement than the one stated in the defendant's answer.

1. It is insisted that these receipts show unmistakably a leasing, and that counsel's statements to the jury admitted it; that, a leasing having been established, it was necessary, in order to show a termination thereof, to plead the fact, as otherwise testimony could not be admitted to prove it. The defendant's contention is that he agreed to pay rent only for the time he was in the use and occupancy of the wharf, and his answer, we think, fairly presents this contention, so that when he ceased to use or occupy it his liability to pay rent ceased.

It is alleged that he did so cease to use or occupy the premises about June 11, 1900, and the evidence complained of tends to show that he was not only not in the occupancy of the wharf, but that another was, and that through the direction and agreement of plaintiff. It was therefore manifestly pertinent for the consideration of the jury.

2. The plaintiff proceeded upon one theory, and the defendant upon another, and each was entitled to support his contention by evidence, and defendant's evidence was competent and relevant for his purpose. Counsel's statements to the jury were susceptible of a construction in harmony with his contention, and did not commit the defendant to the position insisted upon by plaintiff.

3. Nor can what the defendant told Elliott about having quit the wood business, and not wanting the wharves any longer, nor what he and Smith did, be characterized as self-serving acts and declarations. They were incidents that transpired in the course of negotiations between the parties relative to the occupancy of the wharves, and were proper for consideration in connection with all the circumstances connected therewith.

The witness Woodcock testified, over objections, that they (referring to the box factory) had logs lying in front of the wharves, and paid plaintiff for the privilege. This was subsequent to the alleged arrangement had by the box factory with the bank. Prior to that time he paid Hawkes for the privilege. Objection is urged to this testimony on the ground that defendant had not pleaded that his use of the wharf has been interfered with; but it was admissible and relevant, as tending to show that defendant had ceased to use, and was not at that time in the occupancy of, the wharf.

Some instructions were asked and refused, intended to present the same questions as here discussed, and error is assigned in this relation; but what has been said renders it unnecessary to consider them.

4. Another instruction was asked relative to the amount defendant was entitled to recover on account of the repairs and

improvements made, basing it upon the present market value of the materials used after their removal. The answer alleged, in effect, that plaintiff agreed to pay defendant the value of the repairs if he was not permitted to remove them. This means their value as contained in the wharf, and not as secondhand material. So it is apparent that the instruction was unsound, as applied to the facts under the pleadings. This disposes of all the errors assigned, and, being favorable to respondent, the judgment of the trial court will be affirmed.

AFFIRMED.