Argued May 23, affirmed June 12, 1917.

## WAKEFIELD, FRIES & CO. *v.* PARKHURST.

(165 Pac. 578.)

Assignments—Construction—Intention of Parties.

1. An order drawn on a specific fund may operate as an assignment of such fund.

[As to property subject to assignment, see notes in 2 Am. St. Rep. 472; 28 Am. St. Rep. 745.]

Assignments—Evidence—Burden of Proof.

2. The burden is upon one alleging that a fund has been assigned to him to prove that fact, and that the alleged assignor parted with control over the fund.

Assignments—Evidence—Sufficiency.

3. A letter written by the lessee of buildings appointing a corporation his agent to collect rents of buildings named, and authorizing such agent, after paying expenses of operation, to turn over the balance to the owner, was not an assignment of the fund to the owner, but was an instruction to the agent as to disposal of the fund, which direction could be modified or revoked, although the lessee later recognized his moral obligation to apply his rentals to the payment of his debts to the owner.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 1. Statement by MR. JUSTICE McCAMANT.

This is an interpleader suit brought by Wakefield, Fries & Company, a corporation, to determine the ownership of a fund in its hands. The right of interpleader is admitted by the defendants. The controversy is between the appellant, Alfred L. Parkhurst, and the respondents, Chamberlain, Thomas & Kraemer.

It appears from the record that Parkhurst is the owner of lots 1 and 4 in Block 18 of Couch's Addition to the City of Portland; that the defendant Moumal was his lessee; that Moumal had sublet the premises to sundry tenants; that in March, 1915, Moumal was in arrears in a considerable sum in the payment of the rent due Parkhurst; that the latter was demanding payment of this debt. A conversation was had about March 15th between Mr. L. E. Crouch, attorney for Parkhurst, and the defendant Moumal. Moumal expressed his willingness at this interview to turn over the lease or the rentals accruing to him from the premises and Mr. Crouch insisted that this should be done. On March 19th, several days after this interview, the defendant Moumal gave the following letter to Wakefield, Fries & Company:

"I hereby appoint you my agent for the purpose of collecting all of the rentals from that certain building and premises situated and being upon Lots one (1) and four (4), Block eighteen (18), Couch's Addition to the City of Portland, Oregon.

"And hereby authorize and direct that you take full charge of said building and premises and rent the same out to such persons and upon such terms as to you may seem best for my interests; and that out of the funds collected by you from rentals, you will pay the necessary incidental expenses of operation, and the balance you will turn over to Alfred L. Parkhurst, as rental for said premises, under and by virtue of the lease thereof, which I hold.

"And to carry out the terms of said lease and make all the payments and fulfill all the covenants therein as far as is possible, hereby authorizing and directing you to do any and all things which are necessary or requisite to carry out the terms of said lease as fully and to the same extent as I could, or might do, if personally attending thereto."

Thereafter Wakefield, Fries & Company continued to collect the rents, turning over the net proceeds to Parkhurst. On August 30, 1915, Moumal sent the following notice to plaintiff:

"You are instructed to pay to Chamberlain, Thomas, Kraemer, Humphreys, 400–7 Chamber of Commerce Bldg. this city the money now in your hands and hereafter collected as rentals for the building owned by Alfred L. Parkhurst at Second and Couch Streets."

The defendant Moumal followed this up with an assignment, executed under date of September 9, 1915, of all moneys in the hands of plaintiff or thereafter collected by plaintiff, to Chamberlain, Thomas, Kraemer & Humphreys. On September 10th the defendant Moumal notified plaintiff in writing that its authority to collect rents for him was revoked. On August 30th the fund in the hands of plaintiff amounted to $433.32 and thereafter plaintiff collected $86. Being in doubt as to whether the defendant Moumal had the power to make a new disposition of these rentals and direct their payment to Chamberlain, Thomas & Kraemer, plaintiff paid the money into court and brought this interpleader suit. The decree of the lower court adjudged the fund to Chamberlain, Thomas & Kraemer and the defendant Parkhurst appeals.     AFFIRMED.

For defendant and appellant there was a brief and an oral argument by *Mr. L. E. Crouch.*

For defendants and respondents there was a brief over the name of *Messrs. Chamberlain, Thomas & Kraemer,* with an oral argument by *Mr. Otto J. Kraemer.*

No appearance for plaintiff and respondent.

Mr. Justice McCamant delivered the opinion of the court.

1–3. This record raises one controlling question: Did Moumal's letter of March 19, 1915, operate as an assignment of the rentals to be collected in the future by plaintiff? Did he thereby lose control over the fund to such extent as to nullify his subsequent attempt to divert the fund to payment of a debt which he owed Messrs. Chamberlain, Thomas & Kraemer? It has been repeatedly held by this court that an order drawn on a specific and clearly designated fund may operate as an assignment of such fund: *McDaniel* v. *Maxwell,* 21 Or. 202, (27 Pac. 952, 28 Am. St. Rep. 740); *Willard* v. *Bullen,* 41 Or. 25, 33 (67 Pac. 924, 68 Pac. 422); *Morris* v. *Leach,* 82 Or. 509, 511 (162 Pac. 253). In *Commercial National Bank* v. *Portland,* 37 Or. 33, 39 (54 Pac. 814, 60 Pac. 563), an order was held ineffectual to operate as an assignment of the fund involved in that case. The question is one of intention of the parties: *Pacific Coast Co.* v. *Anderson,* 107 Fed. 973, 977 (47 C. C. A. 106). In 3 Pom. Eq. Jur. (3 ed.), Section 1282, it is said:

"A mere letter, communication, or other mandate to the agent, depositary, or debtor, directing him to pay the fund to a designated person, will not of itself operate as an assignment, but it may be withdrawn or revoked at any time before the arrangement is completed, by information given to the intended payee by or on behalf of the drawer. What shall amount to the present appropriation which constitutes an equitable assignment is a question of intention, to be gathered from all the language, construed in the light of the surrounding circumstances."

In the light of the principles announced in these authorities can we gather from the letter of March 19, 1915, an intention on the part of the defendant

Moumal to assign the rentals to be collected from his tenants, and to surrender at that time dominion over the fund arising from such collection? It is true that there was a debt owing from Moumal to Parkhurst. It is also true that Moumal recognizes a moral obligation to apply his rentals on the payment of this debt. He testified, "the money belonged to Mr. Parkhurst, it didn't belong to me," "I considered the money belonged to the building, and the building belonged to Mr. Parkhurst." On the other hand, the letter was not given to Mr. Parkhurst or his attorney. It was handed to Wakefield, Fries & Company several days after Mr. Parkhurst's attorney had asked for an adjustment of the matter.

In its form the letter is a mere mandate or instruction to Mr. Moumal's agent, directing the latter to dispose of Moumal's funds in a particular way. Such a direction may ordinarily be modified or revoked. It is true that plaintiff was collecting rentals for the defendant Parkhurst, but Mr. Moumal testifies he selected plaintiff to act in the premises for other reasons; he had known the plaintiff firm for fifteen years; being about to leave for Alaska and being unable to give personal attention to the matter, he selected plaintiff to perform the service specified in his letter of March 19, 1915. Mr. Moumal further testifies clearly and emphatically that at the time when the letter of March 19th was given to plaintiff, Mr. Guild, secretary of plaintiff, expressly stated that the letter could be recalled and the authority revoked at any time. Mr. Guild does not deny this testimony.

Moumal's testimony that the fund belonged to Parkhurst proves that at the time of the trial he recognized the injustice done Parkhurst by the diversion of the fund to other purposes; this testimony cannot in-

fuse into his letter of March 19, 1915, a vitality which
it does not possess. The intention which is material
in the construction of this instrument is the intention
at the time when it was given. The burden devolved
upon the defendant Parkhurst to prove that the fund
in question had been assigned to him, and that Moumal
had parted with control over it. We think that the
lower court did not err in its conclusion that the de-
fendant Parkhurst failed to sustain this burden. The
decree is affirmed.                                   AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and
MR. JUSTICE HARRIS concur.

---

'Argued May 16, affirmed June 12, 1917.