Argued January 19, affirmed April 23, 1979

In the Matter of the Receivership
of the Property and Affairs of Mico, Inc.,
an Oregon Agricultural Cooperative Association,

MICO, INC., et al, *Respondents,*

*v.*

WILBUR-ELLIS COMPANY, *Intervenor-appellant.*
(No. 24059, CA 11477)

593 P2d 1276

James N. Gardner of Lindsay, Nahstoll, Hart, Neil & Weigler, Portland, argued the cause and filed briefs for intervenor-appellant.

William B. Crow, Portland, argued the cause for respondents and filed a brief for respondent Spokane

Bank for Cooperatives. With him on the brief were Richard A. Edwards, Roy F. Gorski, Jr., and Miller, Anderson, Nash, Yerke & Wiener, Portland.

Scott McArthur, of McArthur, Horner & Jennings, P. C., Monmouth, filed a brief for respondent John DeNoma, receiver for Mico, Inc.

Before Schwab, Chief Judge, and Tanzer, Richardson and Roberts, Judges, and Bryson, Judge Pro Tempore.

BRYSON, J., Judge Pro Tempore.

**BRYSON, J.,** Pro Tempore.

This is a proceeding in equity to compel the receiver of Mico, Inc., to grant intervenor Wilbur-Ellis Co. a preference in the distribution of Mico's assets.[1] Wilbur-Ellis bases its claim for a preference on an alleged assignment of accounts from Mico to Wilbur-Ellis.[2] The trial court found that Mico had not in fact made any assignments of accounts to Wilbur-Ellis and, accordingly, refused to grant Wilbur-Ellis a preference.

Wilbur-Ellis, intervenor, on appeal, contends the trial court "erroneously concluded that no assignment of accounts receivable occurred" and seeks review of that conclusion. We review de novo.

A brief summary of the facts is as follows. Mico, Inc., is an agricultural cooperative that bought, processed, and sold grain. As a result of breakdowns in its equipment, Mico decided to cease doing business in the retail and bulk feed market. This decision meant that Mico no longer needed the raw corn, cotton seed, and mill run it had contracted to buy from Wilbur-Ellis. Mico then transferred its contracts with Wilbur-Ellis to a company called Wilco Farmers Cooperative. Three of the contracts, calling for payments totalling $18,025.42, are at issue here.

Mico was delinquent in its existing debts to Wilbur-Ellis; therefore, the latter was justifiably concerned about its prospects for payment for the corn and other commodities. Mico had instructed Wilbur-Ellis to ship the commodities directly to Wilco. Wilbur-Ellis accord-

---

[1] This proceeding is actually occurring within the Matter of the Receivership of the Property and Affairs of Mico, Inc., a receivership proceeding. Wilbur-Ellis filed a petition to intervene and to compel the receiver to grant a preference sometime after the receivership proceeding had been instituted.

[2] Sales of accounts, often referred to as "assignments," come within Article 9 of the Uniform Commercial Code, ORS ch 79. ORS 79.1020(1)(b). (There are a few exceptions to this coverage. See ORS 79.1040(6).)

In light of our determination that the transaction in the case at bar was not an assignment, we reach no issues under the U.C.C.

ingly proposed that Wilbur-Ellis bill Wilco directly for the price. Mico had transferred its contract rights to Wilco at a profit. Mico would not agree to Wilbur-Ellis's proposal that Wilbur-Ellis collect the payment from Wilco and remit the profit to Mico because Mico preferred to realize its profit directly. However, Mico did agree to the following procedures, as described by the trial court:

"* * * It was finally agreed that Wilco would pay Mico and Mico would then forthwith remit to W-E out of the monies received from Wilco. This was not the usual and ordinary method by which Mico transacted it [sic] business. It was a special arrangement by means of which W-E would receive payment out of a particular fund, namely, money paid over by Wilco to Mico for goods delivered to Wilco by W-E."

Mr. Dick Brown of Mico confirmed this arrangement in a letter to Wilbur-Ellis dated April 11, 1978, stating in part:

"* * * * *.

"All receivables from Wilco Farmers on the abouve [sic] contracts will immediately be forward [sic] to you as payment."

Wilbur-Ellis contends that this letter and the other facts of the transaction established "a partial assignment of the accounts receivable from Wilco Farmers to the extent necessary to meet Wilbur-Ellis' contract price to Mico." Mico, on the other hand, contends that the transaction was only a promise by Mico to pay out of a particular fund. We agree with Mico.

■  Wilbur-Ellis devotes much of its brief to a discussion of whether parties to an assignment of accounts can arrange their agreement so that the *assignor* collects the money due on the accounts and forwards it to the assignee. This discussion was prompted by another creditor's assertion that "[o]nly an order from Mico to Wilco to pay Wilbur-Ellis directly would have created [an assignment]." We agree that the parties to an assignment can arrange to have the assignor collect the money. Such an arrangement is called "indirect

collection of an assigned account" and is recognized by the U.C.C.[3]

■ But it is not enough to show that indirect collection is possible. Wilbur-Ellis also had the burden to show that the parties in this case agreed to such an arrangement. *Wakefield, Fries & Co. v. Parkhurst,* 84 Or 483, 488, 165 P 578 (1917). We conclude that it did not carry this burden. Mr. Brown of Mico testified:

> "Q And may I ask you that—the question as to when you forwarded your April 11, 1977 letter, did you intend to create a security agreement in a specific account?
>
> "A In that, you mean, sign the check over? No."

This testimony, if believed, shows that the parties did not intend to create an assignment, but only to have Mico pay Wilbur-Ellis out of a specified source. We conclude that Brown's letter of April 11, quoted above, merely refers to such an arrangement. Further, the contrary testimony of Mr. Fowler, of Wilbur-Ellis, was vague on the issue of whether the parties in fact agreed to an assignment. His testimony was, instead, to the effect that the parties *might have* agreed to an assignment. We are not persuaded by his testimony. We conclude that Brown's testimony was the more believable and find, as did the trial court, that Wilbur-Ellis did not prove that there was an assignment.

There being no assignment, Wilbur-Ellis's case for a preference disappears.

Affirmed.

---

[3] ORS 79.3180(3) and Official Comment 3; ORS 79.3080 and Official Comment 1.