In re Kenneth Don MARTIN and Kathleen Ann Martin, Debtors.

Ronald R. STICKA, Trustee, Plaintiff,

v.

MELLON BANK (DE) NATL. ASSOC., Defendant.

Bankruptcy No. 692–60344–H07.
Adv. No. 692–6169–H.

United States Bankruptcy Court, D. Oregon.

Feb. 25, 1994.

610

Ronald R. Sticka, Eugene, OR, Trustee.

Richard S. Ross, Portland, OR, for defendant.

## MEMORANDUM OPINION

POLLY S. HIGDON, Bankruptcy Judge.

This matter is before the court on cross-motions for summary judgment. The chapter 7 trustee claims that the Mellon Bank (hereinafter "Mellon") made an unauthorized postpetition transfer under 11 U.S.C. § 549 of estate property consisting of funds in a bank account. Mellon answered that prepetition the debtors (hereinafter "Martins") had executed an absolute irrevocable assignment in its favor of their interest in the claimed fund.

At the time of oral argument on the motions for summary judgment this court asked the parties for certain additional stipulated facts. While obtaining these facts for the court the parties were provided a copy of a certified check from Mellon to the order of the debtors. The back of this check contains language which, upon endorsement by the debtors, granted a security interest in favor of Mellon in the funds in the account. Consequently, the court granted the defendant's motion to amend its answer to include the defense of a security interest in the funds.

The trustee also alleged Mellon's violation of the automatic stay and asked for his attorney's fees under 11 U.S.C. § 362(h). This court ruled against the trustee on this claim at oral argument, finding that at the time Mellon transferred the funds at issue it did not know that the debtors had filed bankruptcy.

Although the funds at issue in this case are minimal the issues before me for decision are crucial to the validity and continued operation of the Refund Anticipation Loan Program (hereinafter "RAL") which has been instituted by H & R Block in conjunction with Mellon Bank.

## I. FACTS

The agreed facts are simple. On January 18, 1992 Mr. and Mrs. Martin went to H & R Block and, desiring to obtain a rapid federal income tax refund, decided to take advantage of RAL. After H & R Block prepared the debtors' federal tax return for 1991 it filed the return electronically with the Internal Revenue Service (hereinafter "IRS"). Prior to such filing the IRS had assured H & R Block that it did not hold any liens against the anticipated refund and that it would make a direct deposit of the refund upon the debtors' submission of IRS Form 8453. This form is entitled "U.S. Individual Income Tax Declaration for Electronic Filing", contains a verification of the income, tax withheld and refund figures shown on the taxpayer's tax return, and authorizes payments of any refund directly into an identified account. The debtors instituted the RAL program by completing and executing a Rapid Refund Request and Supplemental Loan Agreement (hereinafter "RRR and SLA") and IRS Form 8453. Through the RRR and SLA the Martins irrevocably authorized Mellon to establish an account in their name to receive payment of their tax refund from the IRS, to deduct from the proceeds of either the loan or the account a fee to H & R Block and fees for the loan itself, and to "setoff" the refund against the amount of the loan.

Mellon received the Agreement and set up the Martins' "Refund Deposit Account" on January 19, 1992. The expected amount of the Martins' 1991 tax refund was $1,742. On January 21, 1992, Mellon paid the Martins $1,678 (the net amount of the refund after deduction for fees). The Martins endorsed that check. By so doing, through printed material on the back of the check, they also

granted Mellon a security interest in the anticipated refund for 1991 and in all funds deposited into the account.

The Martins filed their Chapter 7 petition on January 29, 1992. At that time there were no funds in the refund deposit account. On January 31, 1992 the IRS electronically transferred the amount of $1,742 to that account. On the same day, Mellon deducted the amount the Martins owed on their loan from the bank, $1,742, by reducing the balance in the account from $1,742 to zero. It then closed the account.

Refund Deposit Accounts are established by Mellon in the taxpayer's name for the sole purpose of collecting the tax refund. It does not issue any kind of pass book, withdrawal certificate, check book, or other document which would allow the taxpayer to either deposit into or withdraw from the account.

## II. DISCUSSION

Mellon's first defense is that it received an absolute assignment of the debtors' right to the 1991 refund. Its legal argument is addressed solely to interpretation of the executed documents. However, this legal issue is only the third, and easiest, of three separate inquiries which must be resolved in Mellon's favor for the court to uphold this defense. The first inquiry is whether, on January 18, 1992, the date of the alleged assignment, the Martins held a property interest in the federal tax refund. Generally the existence and scope of the debtor's interest in a given asset is determined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). However, a claim to a federal tax refund arises under federal law; its nature and existence is determined by federal law.

If the court finds that the Martins held a property interest in the 1991 tax refund at the time they signed the RRR and SLA, it must then inquire whether such an interest may be assigned. This inquiry is parsed between an analysis under both federal law and state law. Generally the right of assignment arises under state law. However, as this asset consists of a claim against the

federal government, federal law also is implicated. Only if the second inquiry is decided in Mellon's favor would this court need to interpret the documents.

## A. PROPERTY INTEREST

■ 26 U.S.C. § 6402 authorizes the IRS to credit the amount of a taxpayer's "overpayment" against any tax owed and "refund the balance" to the taxpayer. 26 U.S.C. § 6411, which addresses the application of net operating loss carrybacks, contains similar terms. Treas.Reg. § 301.6402–3(a)(6) states in relevant part:

> Notwithstanding paragraph (a)(5) of this section, the Internal Revenue Service ... may credit any overpayment of ... income tax ... against (i) any outstanding liability for any tax ... (ii) amounts of past-due support ... (iii) ... past-due and legally enforceable debt....

In *Bellows v. U.S.,* 86–2 U.S.T.C. ¶ 9564, 1986 WL 7057 (N.D.Ill.1986), the Tax Court, distinguishing between an "overpayment" and a "refund", denied a decedent's estate's claim for the full amount of its overpayment, recognizing the IRS's prior right to reduce the overpayment by any outstanding liability prior to refund to the taxpayer of any balance due.

In *In re Siebert Trailers, Inc.,* 132 B.R. 37 (Bankr.E.D.Cal.1991), after reviewing the language of 26 U.S.C. §§ 6402 and 6411, the court held that the IRS had a right to funds constituting a taxpayer-debtor's overpayment superior to that of a creditor secured in the debtor's general intangibles.

In *Pettibone Corp. v. United States (In re Pettibone Corp.),* 151 B.R. 156 (Bankr. N.D.Ill.1992),[1] the bankruptcy court, citing *Bellows* and *Siebert* as authority, and after analyzing the language of the Internal Revenue Code and Treasury Regulations, held the debtors' claim to a refund did not arise prepetition. Certain language in these three cases suggests that the taxpayer has no interest in anything denominated a "refund" until the IRS has determined the balance of any overpayment to be refunded.

**1.** Affirmed on other grounds by *In re Pettibone* *Corp.,* 161 B.R. 960 (N.D.Ill.1993).

All other published bankruptcy cases have held that the right to a refund arises at the end of the tax year to which the refund relates.[2] The genesis of this position is found in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). In *Segal* the issue before the court was whether a loss carryback refund claim was property of the estate under § 70a(5) of the Bankruptcy Act. In that case the debtors filed bankruptcy in September. After the close of that calendar year they sought loss carryback refunds arising from the year's losses, which all arose prepetition. Refunds were generated through application of the loss carrybacks to prior tax years. The bankrupts argued they held a property interest in the refund claim which arose postpetition. The Court held that the refund claim was "property" within the definition of § 70a(5) of the Bankruptcy Act. The Court stated: "[The refund claim] is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a(5)." *Id.*, 382 U.S. at 380, 86 S.Ct. at 515; *see also Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374, *reh'g denied*, 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131 (1974). As § 70a(5) of the Bankruptcy Act vested in the trustee the bankrupt's title to property, the holding necessarily encompassed a finding that as of the date the petition was filed the bankrupt had a property interest in the refund claim. In rejecting the suggestion that the right to the refund could not arise before the claim had been filed, postpetition, at the end of the year, the Court stated that "postponed enjoyment does not disqualify an interest as 'property'". *Id.* When *Segal* was decided the

provisions of 26 U.S.C. §§ 6402 and 6411 were effective.

The Ninth Circuit Court of Appeals has subsequently followed *Segal's* holding that potential carryback tax refunds became property of the estate as of the date the bankruptcy petition was filed. *See In re Bob Richards Chrysler–Plymouth Corp., Inc.*, 473 F.2d 262, 264 (9th Cir.), *cert. denied, Western Dealer Mgmt., Inc. v. England*, 412 U.S. 919, 93 S.Ct. 2735, 37 L.Ed.2d 145 (1973).

This court finds that the Martins' right to the refund arose at the end of 1991. *Bellows*, correctly decided, is distinguishable on its facts to the issue before me. In *Bellows* the court simply applied the clear mandate of the statute, which conditions the taxpayer's right to receive any refund on the IRS's prior right to credit overpayments of tax against other taxpayer liabilities. It did not address *when* the taxpayer's refund claim arose. I respectfully disagree with the legal analysis by the bankruptcy courts in both *Pettibone* and *Siebert*. This court believes that the bankruptcy courts in both *Pettibone* and *Siebert* erred in failing to recognize that the point of time at which a claim or interest may arise may not be the point at which the *value* of the claim or interest is finally determined. It is unimportant to the existence of this right that its final value may be fixed at a future date.

This court concludes that the Martins held a refund claim for federal income taxes for 1991 at the time they entered the RAL program.[3] This refund claim was contingent upon two factors. First, the Martins had to file a request for refund pursuant to 26 U.S.C. § 6511.[4] Second, the IRS had to determine whether it would credit any of the

---

**2.** *See In re Pettibone Corp.*, 161 B.R. 960 (N.D.Ill. 1993); *Harbaugh v. United States*, 89–2 U.S.T.C. ¶ 9608, 1989 WL 139254 (W.D.Pa.1989), *aff'd*, 902 F.2d 1560 (3d Cir.1990); *In re Johnson*, 136 B.R. 306, 309 (Bankr.M.D.Ga.1991); *In re Runnels*, 134 B.R. 562, 564 (Bankr.E.D.Tex.1991); *In re Rozel Industries, Inc.*, 120 B.R. 944, 949 (Bankr.N.D.Ill.1990); *In re Ferguson*, 83 B.R. 676, 677 (Bankr.E.D.Mo.1988); *In re Mason*, 79 B.R. 786, 788 (Bankr.N.D.Ill.1987); *In re Eggemeyer*, 75 B.R. 20, 22 (Bankr.S.D.Ill.1987); *In re Dominguez*, 67 B.R. 526, 528 (Bankr.N.D.Ohio 1986); *In re W.L. Jackson Mfg. Co.*, 50 B.R. 506,

508 (Bankr.E.D.Tenn.1985); *In re Conti*, 50 B.R. 142, 148 (Bankr.E.D.Va.1985).

**3.** This court's unpublished case, *In re Dayton*, Case No. 685–07165 (Bankr.D.Or. December 9, 1985), cited by the trustee in support of his position, is distinguishable. There I determined that the nonworking spouse was not entitled to claim an exemption in a tax refund generated from a jointly filed tax return.

**4.** Treas.Reg. § 301.6402–3(a)(5) states in applicable part: "A return or amended return shall constitute a claim for refund or credit...."

overpayment against any liability listed in Treas.Reg. § 301–6402(A)(6).

■ Oregon law recognizes contingent property rights. *See e.g., Hardwick v. Dept. of Revenue,* 272 Or. 100, 105, 535 P.2d 89, 92 (1975).

## B. ASSIGNABILITY

■ The parties have not addressed whether the RAL documents signed by the Martins comply with the Assignment of Claims Act, 31 U.S.C. § 3727. 31 U.S.C. § 3727(b) states:

> An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this subsection is valid for any purpose.

A review of the terms of the RRR and SLA and Form 8453 show that they do not comply with the Act. Further, because at the time of the execution of these documents the refund claim was contingent upon a final determination by the IRS of the refund amount, it cannot be said that the amount of the claim had been decided prior to the assignment.

■ 31 U.S.C. § 3727(c) provides that subsection (b) does not apply to a financing institution "of money due or to become due under a contract providing for payments totaling at least $1,000...." Mellon is a financing institution within the meaning of subsection (c). However, the language of this subsection is almost identical to certain language found in the Assignment of Con-

tracts Act, 41 U.S.C. § 15, which is an exception to the prohibition on assignments of rights of payment in government contracts.[5] Therefore this court interprets subsection (c) to except from the general anti-assignment provisions of 31 U.S.C. § 3727 only right to payments arising out of contracts entered into with the federal government. The right to a federal tax refund does not fall within the exception.

■ The parties' failure to comply with the requirements of the Assignment of Claims Act renders the assignment, as to the government, without effect. *See People of the State of New York v. Hanley Milling Co.,* 41 F.Supp. 844, 845 (N.D.Ohio 1940). Because the Act is for the protection of the government, however, it may waive the Act's prohibition. *Tuftco Corp. v. United States,* 222 Ct.Cl. 277, 614 F.2d 740, 745 (1980); *United States v. Sinton Dairy Foods Co., Inc.,* 775 F.Supp. 1417, 1419 (D.Col.1991). This court has examined the language of Form 8453 and the RRR and SLA. The bank account was set up in the taxpayers' names. On Form 8453 the taxpayers request the government to transfer the refund directly to their account. In the RRR and SLA the taxpayers state:

> Mellon Bank may set off against the balance of my account any due and payable amount which I owe to Mellon Bank, including but not limited to the balance of any RAL which I may receive or have previously received.

These facts support a finding that, although the government deposited the Martins' refund into the bank, by so doing it was transferring the funds to the taxpayers, not to the bank. It did not waive the Act's provisions.

■ The assignment of a claim which does not comply with the Assignment of Claims Act is only effective between the parties to the assignment after the assigned claim has

---

**5.** 41 U.S.C. § 15 states in relevant part:
The [anti-assignment] provisions ... shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution....

The purpose of the exception was to "make it easier for government contractors to secure financing for carrying out obligations to the Government to the end that government contracts might be speedily and effectively performed." *Waxman v. United States,* 125 Ct.Cl. 464, 500, 112 F.Supp. 570, 588 (1953).

been paid. *In re Freeman,* 489 F.2d 431, 433 (9th Cir.1973). In a case involving the assignment of a federal tax refund claim the Ninth Circuit stated:

> At the time of assignment, then, while the assignor had a present existing claim against the United States, she could not effectively transfer to another the right as she enjoyed it, since she could not transfer to another the power to press the claim against the United States. One effect of the assignment, then, was to convert the right assigned into a future right—a right to the proceeds of payment once the claim was paid by the United States.

*Id.* Whether such a right may be assigned is determined by state law. *Id.* (citing *Danning v. Mintz,* 367 F.2d 304, 308 (9th Cir. 1966)).

■ Traditionally an assignment effective at law passes all the assignor's vested right, title and interest in property to the assignee at the time of the assignment. Thereafter the assignee is in a legal position to pursue the property right as against a third party. However, some states also have recognized valid present assignments of mere expectancies which ripen *in futuro* into rights, if the assignment is supported by valuable consideration. *See In re Musser,* 24 B.R. 913, 919 (W.D.Va.1982) (citing *Braxton v. Bell,* 92 Va. 229, 23 S.E. 289 (1895)); *Bank of California v. Connolly,* 36 Cal.App.3d 350, 366–67, 111 Cal.Rptr. 468, 479–80 (1973); *Prudential Ins. Co. of America v. Broadhurst,* 157 Cal. App.2d 375, 321 P.2d 75 (1958). An expectancy has been defined as a mere possibility or hope of obtaining future property. *See* 4 *Pomeroy's Equity Jurisprudence* § 1285 at 820 (5th ed. 1941). The assignee of a mere expectancy cannot pursue immediately the subject of the assignment against a third party. When such an assignment becomes operative it relates back to the date of the assignment. *Freeman,* 489 F.2d at 433 (citing *Prudential,* 157 Cal.App.2d at 378, 321 P.2d at 77).

The Martins signed all the relevant forms in Oregon. Although the Mellon Bank does not operate in Oregon its agent for purposes of initiating the RAL program with the Martins was the H & R Block representative in Grants Pass, Oregon. Therefore Oregon law is applicable.

Oregon courts have not addressed whether an entity may make a valid legal assignment of a right which, as to the potential assignee, only arises *in futuro.* Under the *Erie* Doctrine, state law as announced by the highest court of the state is to be followed by the federal court. If there is no decision by that court then the federal court may apply what they find to be the state law after giving proper regard to other courts of the state. *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 464–65, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967). If the state court has not ruled on the issue then the federal court must determine how it believes the state court would rule. *Summers v. Wallace Hospital,* 276 F.2d 831, 833–34 (9th Cir.1960).

In *Wittmayer v. Edwards,* 99 Or.App. 136, 781 P.2d 866 (1989), the Oregon Court of Appeals held that there was a valid present assignment of a right to receive future payments under an executed land sale contract. However, *Wittmayer* is distinguishable. There the assignor held a vested right to collect under the terms of the contract. Upon assignment there was no legal impediment to the assignee's pursuit of the right to receive the contract payments.[6] In Oregon a party may assign an unliquidated account. *See Hackett Digger Co. v. Carlson,* 127 Or. 386, 272 P. 260, 262 (1928). An assignment of this nature is also distinguishable from our facts because at the time of assignment the assignor held a vested right to collect the account subject only to its liquidation.

In two old cases the Oregon Supreme Court distinguished between assignments cognizable at law and "equitable" assignments. *See Wadhams & Co. v. Inman, Poulsen & Co.,* 38 Or. 143, 63 P. 11 (1900); *Stott v. Franey,* 20 Or. 410, 26 P. 271 (1891). This distinction makes these old cases hard to interpret and largely is only of historical

---

**6.** *See Restatement (Second) of Contracts* § 317(2)(a) (1991). Rights in existence at the time of assignment are assignable even though they have not matured.

importance.[7] The distinction, however, may become critical if the assignor has filed bankruptcy between the time of an alleged assignment and its attempted enforcement by the assignee.

In *Stott*, in discussing the alleged assignment of warrants to be issued by the City of Portland for certain contracting work, the court stated:

> At the time of the assignment of the warrants, they were not in existence, and such assignments therefore could not create a strictly legal title. At most, it could only create an equity, that is, a right of interest over which courts of equity have been accustomed to exercise jurisdiction, and, in proper cases, to protect and make effectual according to the intention and rights of the parties. The principle is stated in 1 Pom. Eq.Jur. § 168, as follows: "The assignee of an expectancy, possibility, or contingency acquired at once a present equitable right over the future proceeds of the expectancy, possibility, or contingency, which was of such a certain and fixed nature that it was sure to ripen into an ordinary equitable property right over those proceeds as soon as they came into existence by a transformation of the possibility or contingency into an interest in possession. There was an equitable ownership or property in abeyance, so to speak, which finally changed into an absolute property, upon the happening of the future event. Equity permitted the creation and transfer of such an ownership."

*Stott,* 26 P. at 272.

Given the language which appears in both *Stott* and *Wadhams,* which seems to distinguish between interests recognized at law and interests recognized only at equity and which emphasizes the court's equitable power to protect the intended assignee, this court concludes that Oregon's highest court would not find as a matter of *law* that a valid present assignment may be made of a right which, as to the assignee, may arise only in the future. Rather, the court would find the assignee held an equitable interest in the subject of the assignment and protect that interest through exercise of its equitable powers. This interpretation is supported by the fact that even before the joinder of law and equity jurisdiction the legal assignee of a contract right had an adequate remedy under common law. *See* 4 *Corbin on Contracts* § 858 at 412 (4th ed. 1951). Recognition of such equitable assignments has been sanctioned by Oregon courts provided valuable consideration has been given by the assignee, *Scott v. Hall,* 177 Or. 403, 409, 163 P.2d 517, 519 (1945), the assignment addresses a specific fund, and the assignor retains no control over an identifiable fund, no authority to collect and no power of revocation. *See Commercial National Bank v. Portland,* 37 Or. 33, 38–39, 54 P. 814, 60 P. 563 (1900); *Matter of Estate of Vaughn,* 38 Or.App. 29, 588 P.2d 1295, 1297 (1979). The assignee of an equitable assignment takes priority over any general creditors. *Willard v. Bullen,* 41 Or. 25, 33, 67 P. 924, 68 P. 422 (1902).

## C. CONTRACT INTERPRETATION

In Oregon no special form is necessary to assign an interest in property. *See Wittmayer,* 99 Or.App. at 139, 781 P.2d at 868 (citing *Anderson v. Dept. of Justice,* 38 Or.App. 29, 32, 588 P.2d 1295 (1979); *see also Levins v. Stark,* 57 Or. 189, 110 P. 980, 981 (1910). A valid assignment may be written or oral. *Id.* What must be shown is a present intent to assign and an intent to receive the assignment. *Wakefield, Fries & Co. v. Parkhurst,* 84 Or. 483, 486, 165 P. 578 (1917). In order to determine the intent of the parties the court must examine all the circumstances of the transaction. *Id.; Levins,* 110 P. at 981. The burden is on the assignee to prove a valid assignment. *Wakefield,* 84 Or. at 488, 165 P. 578.

Mellon emphasizes that through the RRR & SLA the Martins authorized it to establish an account in their names solely for the purpose of receiving the refund and to apply the refund against their indebtedness to it. In Form 8453 the Martins consented to having the IRS directly deposit the refund into

---

7. It is difficult to know whether the Oregon courts were distinguishing between an "equitable" interest and a "legal" interest or simply were discussing the enforcement of a "legal" interest by "equitable" means.

this account to which they had no access. These facts evince the Martins' intent to transfer their interest in the refund at the time of the execution of these documents. Mellon paid $1,678 in consideration of this transfer, demonstrating its intent to accept it.

The trustee points out that on the back of the proceeds check from Mellon to the Martins, Mellon is granted a security interest in all funds deposited into the account. This language is consistent with the fact that both the RRR & SLA and the rear of the proceeds check refer to Mellon's right to setoff the amount owed to it by the Martins against the refund. He states this language is inconsistent with the existence of an assignment.

It is clear from the manner in which the RAL program was structured, which is reflected in the language of the documents the Martins signed, that the parties intended the cash refund in the bank account be held by the debtors for the benefit of Mellon. The Martins never had access to these funds. They were held in a special account and were never commingled with other of the Martins' funds. Only Mellon had access to the funds. The Martins granted Mellon this access for the sole purpose of crediting the amount against their RAL debt. Under these circumstances Oregon courts would find that an equitable assignment arose wherein the Martins held only legal title to the funds and no equitable interest.

### D. PROPERTY OF THE ESTATE

 For success under 11 U.S.C. § 549(a) the trustee must demonstrate that the unauthorized transfer was of property of the estate. This court concludes that the tax refund was not property of the estate. My reasons follow.

 What property interests of the debtor become property of the estate is determined by federal law. *See* 11 U.S.C. § 541(a). 11 U.S.C. § 541(a) has been interpreted very broadly. However, an estate may take no greater interest in property than that held by the debtor. *In re Farmers Markets, Inc.,* 792 F.2d 1400, 1403 (9th Cir.

1986) (quoting 124 Cong.Rec. S17413 (daily ed. Oct. 6, 1978)). As previously stated, generally, the existence and scope of the debtor's interest in a given asset is determined under state law. This includes a determination of whether an equitable interest exists. *See In re Bullion Reserve of North America,* 836 F.2d 1214, 1217 (9th Cir.1988) (citing *Toys "R" Us, Inc. v. Esgro, Inc.,* 645 F.2d 794, 797 (9th Cir.1981)).

11 U.S.C. § 541(d) states:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

It has always been clear that through application of the provisions of 11 U.S.C. § 541(d) property held in an *express* trust by a debtor for another under state law is not property of the bankruptcy estate. 11 U.S.C. § 541(d) also excludes property held under a trust created through statute. *See Begier v. IRS,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). Until recently in the Ninth Circuit, however, it was less clear to what extent the provisions of 11 U.S.C. § 541(d) would support the recognition in bankruptcy of a constructive trust or other remedy arising by operation of the state court's equitable powers. On this issue the Ninth Circuit has stated:

We necessarily act very cautiously in exercising such a relatively undefined equitable power in favor of one group of potential creditors at the expense of other creditors, for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws.

*In re North American Coin & Currency, Ltd.,* 767 F.2d 1573, 1575 (9th Cir.1985).[8]

---

**8.** This was not the basis for the holding in *North* *America.* The court found the facts did not sup-

The Ninth Circuit has now expressly held that if state law supports a finding that property is held by the debtor in constructive trust the funds so held are not property of the estate. *See In re Unicom Computer Corporation*, 13 F.3d 321 (9th Cir.1994). Although our facts support a finding of an equitable assignment under Oregon law rather than a constructive trust, *Unicom* compels this court to find that the funds held by the debtors in their Mellon account were not property of the estate at the time of the bankruptcy filing.

Under 11 U.S.C. § 544 the trustee may avoid certain prepetition transfers of property of the debtor. If the transfer is avoided the property may become property of the estate. Avoidance will occur if, under state law there is: (1) a hypothetical creditor who extends credit to the debtor at the time of commencement of the case and that obtains at such time and with respect to such credit a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien; (2) a hypothetical creditor who extends credit to the debtor at the time of the commencement of the case, and obtains at such time and with respect to such credit an execution against the debtor that is returned unsatisfied at such time; or (3) a hypothetical bona fide purchaser of real property from the debtor whom applicable law permits such transfer to be perfected that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case.

Under our facts 11 U.S.C. § 544 would not allow the trustee to avoid the Martins' prepetition transfer to Mellon of their equitable interest in the refunds. As we are dealing with personal property number (3) is inapplicable. Under Oregon law a judgment creditor and a creditor who has unsuccessfully attempted an execution do not obtain judgment liens against personal property.

The trustee under 11 U.S.C. § 549 may not avoid the transfer Mellon made from the account two days after the Martins filed their bankruptcy petition. The court may enter an order granting the defendant's motion for summary judgment on this ground.

port application of a constructive trust under

## E. SECURITY INTEREST

█ In the alternative, Mellon argues that if there was no assignment of the refund claim it holds a perfected security interest in the claim and the proceeds therefrom.

█ The provisions of the Uniform Commercial Code as enacted by the state of Oregon, do not apply "to a security interest subject to any statute of the United States . . . to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property." O.R.S. 79.1040(1). It is clear from the Official Comment to that statute that its provisions apply only where certain federal law governs the rights of the parties. Most of the Comment addresses federal statutes which provide for security interests in particular types of property. The purpose of the Assignment of Claims Act has been interpreted to be the protection of the United States's vital interests. Where the government is no longer an interested party the Act does not affect disputes between private entities. *In re Metric Metals Intern., Inc.*, 20 B.R. 633, 637 (S.D.N.Y.1981); *Matter of Topgallant Lines, Inc.*, 125 B.R. 682, 689 (Bankr. S.D.Ga.1991), *aff'd in part and remanded*, 154 B.R. 368 (S.D.Ga.1993); *Matter of Jefferson Mortg. Co., Inc.*, 25 B.R. 963, 968 (Bankr. D.N.J.1982). As the dispute before me is one between private parties, and the government is in no way involved, the provisions of the Assignment of Claims Act do not govern the parties' relative rights. Therefore the provisions of O.R.S. 79.1040(1) are inapplicable; state law governs the determination of the effectiveness of Mellon's security interest in the funds in the account.

The parties do not dispute that the Martins endorsed the RAL proceeds check which granted Mellon a security interest in the funds in their bank account. Under O.R.S. 79.2030(1) generally a security interest attaches and is enforceable against the debtor when the debtor has signed a security agreement containing a description of the collateral, value has been given and the debtor has rights in the collateral. As this court has

Arizona law.

determined the debtors had rights in the refund at the end of 1991, Mellon's security interest in the refund arose when the proceeds check was endorsed.

Mellon claims that the tax refund is either an instrument or money and as either its interest therein was duly perfected by possession. This court disagrees with the character of the collateral. At the time the debtors granted the security interest they did not have the funds in hand, nor did they have a writing which "is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment." O.R.S. 79.1050(1)(i). What they had was a right, a chose in action. A chose in action is a general intangible in which a security interest is perfected by filing a financing statement. O.R.S. 79.1060(2); O.R.S. 79.3020(1). Mellon did not file a financing statement covering this security agreement. Although unperfected, the security interest was nonetheless effective between the Martins and Mellon when the Martins filed bankruptcy.

With the court's approval Mellon filed an amended answer in which it raised, as a second affirmative defense, its security interest in the Martins' tax refund. Fed.R.Civ.P. 15(a) allows a responsive pleading to an amended pleading to be filed within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period is longer, unless the court orders otherwise. This court did not order otherwise. The trustee did not file a responsive pleading to the amended answer nor did he seek leave of the court to amend the complaint to add a claim for avoidance of Mellon's security interest in the refund. Therefore, as Mellon holds a valid security interest in the funds the court may also grant the defendant's motion for summary judgment on this basis.

This memorandum opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 7052 they will not be separately stated.