## Richmond.

### CARTER BRAXTON, TRUSTEE, v. BELL AND OTHERS.

#### NOVEMBER 21, 1895.

1. CONTRACTS FOR SALE OF PERSONAL PROPERTY—*Recordation—Notice.*—
   Sections 2463, 2464 and 2465 of the Code do not authorize the
   recordation of any contract for the sale of personal property, except
   one made in consideration of marriage, and such recordation is not
   notice to a subsequent purchaser of such personal property for value
   and without notice.

2. CONTRACTS FOR SALE OF PERSONAL PROPERTY NOT IN EXISTENCE—*Legal
   Title—Equitable Ownership.*—A contract for the sale of personal
   property not in existence does not operate to convey the legal title
   thereto when it is subsequently acquired. At law, it is not a valid
   assignment. In equity, it operates as an assignment, and vests an
   equitable ownership which a court of equity will protect and main-
   tain. In a contest, however, between such equitable claimant and a
   subsequent *bonà fide* purchaser for value, holding the legal title, the
   latter must prevail. *First National Bank v. Turnbull,* 32 Gratt. 695,
   distinguished and *dictum* disapproved.

Appeal from a decree of the Circuit Court of Augusta
county, pronounced June 2, 1894.

*Reversed.*

This was a suit in chancery instituted in the Circuit Court
of Augusta county by H. M. Bell against Carter Braxton,
trustee in a deed of trust made by Chichester & Stewart, and
against the grantors in said deed, and the creditors therein
secured. The complainant charged that on April 7, 1888, he
had sold certain real estate, known as "Stribling Springs"
property, to Chichester & Stewart, on credit; that the

purchaser had agreed, amongst other things, to give a deed of
trust, not only on said real estate, but on all the personal
property they should thereafter place thereon, to secure the
purchase price of said real estate; that the contract was in
writing, and duly recorded in the clerk's office of the County
Court of Augusta county on the 3d day of July, 1888;
that he had conveyed said real estate to the purchasers, and
they had executed a deed of trust thereon to secure the
deferred payments of purchase money therefor, but that no
deed of trust had ever been given on said personal property,
as required by the written contract of April 7, 1888; that,
notwithstanding said contract, the said Chichester & Stewart,
in fraud of complainant's rights, had, on the 13th day of
November, 1893, executed and delivered to Carter Braxton,
as trustee, a deed of trust on all of the personal property on
the premises, on which complainant claimed a lien as afore-
said, to secure sundry enumerated creditors the amounts set
forth in said deed; that the deed last mentioned had been
duly recorded in said clerk's office; that the trustee had taken
possession of said personal property and advertised the same
for sale; and that " this sale is made without regard to the
claim or lien of your orator, and without any recognition of
his rights in the premises."

The grantors in the deed of trust, the trustee, and the
creditors secured, were made defendants, and the prayer of
the bill was " that the said Carter Braxton, trustee, may be
enjoined and restrained from disposing of said property; that
a receiver may be appointed to take charge of said property,
with discretion to dispose of such of the same as is of a
perishable character, holding the proceeds subject to the
order of your honor; that a decree may be entered establish-
ing the lien of your orator on said property, and for its sale
for the satisfaction thereof; and that all such other, further,
and general relief may be granted to your orator as is suited

to his cause, and as may be consistent with the rules of a
court of equity."

The Circuit Court held that H. M. Bell, the complainant,
had priority over Carter Braxton, trustee, and the creditors
secured in the deed to him.   From the decree Braxton,
trustee, appealed.

The other facts sufficiently appear in the opinion of the
court.

*A. C. Braxton*, for the appellant.

*Patrick & Gordon* and *R. P. Bell*, for the appellees.

RIELY, J., delivered the opinion of the court.

On April 7, 1888, as is evidenced by the contract of that
date, H. M. Bell sold to Frank Chichester and Robert L.
Stewart the real estate in Augusta county known as "Strib-
ling Springs" for the sum of $15,000, to be paid in instal-
ments extending over several years, for which the vendees
were to execute their bonds and secure them by a deed of
trust on the real estate, and also by a deed of trust on any
personal property they might thereafter put on the premises.
The contract of sale was acknowledged and admitted to record
in the clerk's office of the County Court of Augusta county
on July 3, 1888.   The vendor conveyed the land to the
vendees by deed bearing the same date as the contract, but it
was not acknowledged for record until October 3, 1888.   A
deed of trust to secure the bonds for the purchase money was
given by the vendees on the land *only*, which likewise bears
the same date as the contract, but it was not acknowledged
for record until October 5, 1888.   The vendees took posses-
sion of the land, and afterwards put on it a large amount of

personal property that was needed to equip the place as a summer resort; but the deed of trust on such personal property to secure further the purchase money for the land, as contemplated by the contract of sale, was never made.

On November 13, 1893, Chichester & Stewart conveyed their personal property by deed to Carter Braxton, in trust to secure their creditors other than Bell, which deed was duly acknowledged and admitted to record on the day of its date.

The controversy here is between the trustee, Braxton, and H. M. Bell, as to the right to the personal property. The former claims it as a *bona fide* purchaser for value without notice, by virtue of the deed of trust conveying it to him, and the latter claims it under the agreement in the contract of sale of April 7, 1888, to give him a deed of trust on the personal property which they might thereafter put on the land, as additional security for the purchase money.

It is settled by a number of decisions of this court, which are collated in the case of *Chapman* v. *Chapman et als.*, 91 Va. 397, that a trustee in a deed of trust is, under our statutes, a purchaser for value.

It is not pretended that Braxton, the trustee, had actual notice of the agreement of Chichester & Stewart to give to Bell a deed of trust on the personal property, as a further security for the purchase money for the "Springs" property; but it is claimed that the contract of sale having been recorded, he was affected with constructive notice of such agreement.

Many conveyances and other writings are required by the statute law of the State to be recorded. A list of many of them will be found in 2 Minor's Institutes 850. The statutes which, it is claimed, apply to this case are secs. 2463, 2464, and 2465 of the Code. They are as follows:

"Sec. 2463. Every contract, not in writing, made, in respect to real estate or goods and chattels, in consideration of marriage, or made for

the conveyance or sale of real estate, *for* a term therein of more than five years, shall be void, both at law and in equity, as to purchasers for valuable consideration without notice and creditors."

"Sec. 2464. Any such contract, if in writing, shall, from the time it is duly admitted to record, be, as against creditors and purchasers, as valid as if the contract was a deed conveying the estate or interest embraced in the contract."

"Sec. 2465. Every such contract (in writing), every deed conveying any such estate or term, and every deed of gift, or deed of trust, or mortgage, conveying real estate or goods and chattels, shall be void as to subsequent purchasers for valuable consideration without notice, and creditors, until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such contract or deed may be."

The writing of April 7, 1888, wherein is contained the agreement of Chichester & Stewart, and the recordation of which is relied on to affect the trustee, Braxton, with constructive notice, is not a deed, but simply an agreement or *contract to give a deed.* Not being a deed, but only a contract, the enquiry is, is a *contract* in regard to personal property embraced within the statutes quoted above, and authorized to be recorded. There is but one species of contract in regard to goods and chattels embraced within the provisions of sec. 2463, and that is a contract in consideration of marriage.

Sec. 2464 provides that "any such contract," that is, such contract as is described in the preceding section, and, so far as goods and chattels are affected, a contract made in *consideration of marriage,* "if in writing, shall, from the time it is admitted to record, be, as against creditors and purchasers, as valid as if the contract was a deed conveying the estate or interest embraced in the contract."

And by sec. 2465 it is provided that "every such contract in writing," that is, still, such contract as is described in sec. 2463, which, so far as it relates to goods and chattels, is, as we have seen, a contract made in consideration of mar-

riage, and " every deed conveying any such estate or term, and every deed of gift, or deed of trust, &c.,    *    *    *    shall be void as to subsequent purchasers for valuable consideration without notice, and creditors, until and except," &c.    *    *    *

It is very plain, from a perusal and comparison of these sections, that there is but one species of contract in relation to personal property which is authorized to be recorded, and that is one made " in consideration of marriage." And such is not the character of the contract in question.

Our attention was particularly called by counsel of H. M. Bell to the case of *First National Bank of Alexandria* v. *Turnbull & Co.*, 32 Gratt., where, on page 705, Judge Anderson expresses the opinion that the contract out of which the litigation in that case grew was such an instrument as sec. 4, chap. 114, of the Code of 1873, which corresponds to sec. 2464, quoted above, of the Code of 1887, authorized to be recorded, and that its recordation was constructive notice to creditors and subsequent purchasers. The instrument there referred to by the learned judge was a contract in regard to the purchase of cotton and the product to be manufactured from it. The decision in that case was eminently just and right. It was not, however, dependent in any manner upon the recordation of the contract, and the construction of the statute was not at all necessary to the decision of the case. What was said by Judge Anderson in that case was an *obiter dictum*, and should not control us in the decision of the case at bar, satisfied, as we are, that the statute does not embrace contracts in regard to goods and chattels, except contracts made in consideration of marriage. No one, we feel sure, would have been more ready to rectify the error that is apparent as to this matter in the opinion in the case referred to than the lamented jurist who wrote the opinion, if his attention had been subsequently called to it, and an opportunity had been afforded him to do so.

Since the statute does not require a *contract* in regard to personal property, except a contract made in consideration of marriage, to be recorded, its recordation was a nullity, and not notice to any one. It did not constitute constructive notice to the appellant. Where a writing which the law requires to be recorded, in order to affect creditors and subsequent purchasers for value without actual notice, is improperly recorded, either because it was not duly authenticated or because of some other reason, even in that case its recordation is not notice. 2 Minor's Inst. 866–7; *Davis et als.* v. *Beazley et als.*, 75 Va. 491, and *Raines* v. *Walker*, 77 Va. 92. *A fortiori* must this be the case as to a writing not required or authorized to be recorded, but which has been spread upon the record. Consequently the appellant was not affected with notice, actual or constructive, of the agreement by Chichester & Stewart to give H. M. Bell a deed of trust on the personal property which they might thereafter put on the real estate purchased of him.

If, then, the appellee, H. M. Bell, is entitled to the benefit of the said property, it must be by reason of the inherent strength of his claim. What is its nature? Is it legal or equitable? It is based, as we have seen, on an agreement to give a lien by deed of trust on personal property to be thereafter acquired. Such an agreement does not operate to transfer the legal title to the property when it is subsequently acquired. At law, it is not a valid assignment. It is merely an equitable right, which a court of equity will enforce against the party contracting to give the lien, when he has acquired the property. " It is elementary," says Pomeroy in his Equity Jur., sec. 1288, " that a contract for the sale of chattels, which the vendor does not own, will not take effect upon the goods, when subsequently acquired, so as to pass a legal property in them to the purchaser, without some new act of the vendor after the property is acquired. The doc-

trine of equity is different. A sale, assignment, or mortgage, for a valuable considération, of chattels or other personal property to be acquired at a future time, operates as an equitable assignment, and vests an equitable ownership of the articles in the purchaser or mortgagee as soon as they are acquired by the vendor' or mortgagor, without any further act on the part of either; and this ownership a court of equity will protect and maintain at the suit of the equitable assignee." The same principle applies equally to a deed of trust. If this *only* is the effect of a mortgage or deed of trust actually executed, a mere agreement to give a deed of trust can be no greater. It is clear that the claim of Bell is wholly an equitable and not a legal right. Indeed, his counsel did not claim it to be otherwise. The contest is narrowed down, then, to the simple question, whether the claimant of a prior equity, or a *bona fide* purchaser for value without notice, who has thereby acquired the legal title, hath the better right to the property.

It is a general rule that where there are equal equities, the first in order of time shall prevail; that he who has the prior equity in point of time is entitled to the like priority in point of right. 2 Story's Eq. J., sec. 1502. Pomeroy in his Eq. J., sec. 414, states the rule as follows: "As between persons having only equitable interests, if their interests are *in all other respects equal,* priority in time gives the better equity." But this rule applies only between equitable claimants. Where the controversy is between the claimant of an equitable interest on the one side, and a *bona fide* holder for value of the legal title, without notice, on the other, a different rule prevails.

Judge Christian, in his able opinion in the case of *Briscoe* v. *Ashby et als.*, 24 Gratt. 454, 473, in speaking of a purchaser for valuable consideration without notice, said: "No party can occupy a higher ground than that in a court of

equity; and if he can maintain that position, his title is established and his position impregnable."

So, Mr. Pomeroy, in speaking of the defence of a *bona fide* purchaser without notice, says: "Where the defendant acquired the legal estate at the time and as a part of his original purchase, the fact of his purchase having been *bona fide* for value and without notice is a perfect defence in equity to any suit brought by the holder of a prior equitable estate, lien, encumbrance, or other interest, seeking either to establish and enforce his equitable estate, lien, or interest, or to obtain any other relief with respect thereto which can be given by a court of equity." 2 Pom. Eq., sec. 767. See also sec. 740.

The appellant, under the statutes of the State as expounded by this court, is, as we have seen, a purchaser for value. Being a *bona fide* purchaser for value without notice, his right to the property in dispute is therefore paramount.

In the case of the *First National Bank of Alexandria* v. *Turnbull & Co., supra*, which was so much relied on by the counsel for H. M. Bell as an authority to control the decision of this case, the contest was not between a claimant of a mere prior equity and a *bona fide* purchaser for value without notice, as is the case here, but between a claimant by equitable lien and an execution creditor. The principle involved in that case was, in this respect, wholly different from that which, by an entire uniformity of decisions and text-writers, controls this. As was said by Judge Burks, in *Borst* v. *Nalle et als.*, 28 Gratt. 423, 433: "Authorities without number might be cited, to show that, where statutory enactments do not interfere, the creditor can never get by his judgment more than his debtor owns, and to this he will be confined, as he should be, by a court of equity."

The decree of the Circuit Court, for the foregoing reasons, must be reversed, and a proper decree entered in conformity with this opinion.

*Reversed.*